CONNIE HESS, Plaintiff-Appellee, v. MICHELLE ESPY, Defendant-Appellant.

Second District   No. 2—03—0464

Opinion filed July 2, 2004.

Gary R. Kardell and Lori L. Hoadley, both of Hinshaw & Culbertson, of Rockford, for appellant.

James D. Sparkman, of Pete Sullivan & Associates, P.C., of Rockford, for appellee.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, Connie Hess, filed a complaint against defendant, Michelle Espy, for injuries she allegedly sustained when defendant's vehicle rear-ended plaintiff's vehicle. Following a trial in the circuit

court of Winnebago County, the jury returned a verdict in plaintiff's favor and awarded her damages in excess of $190,000. The trial court denied defendant's posttrial motion. On appeal, defendant asserts that the jury's verdict as to liability was against the manifest weight of the evidence. Alternatively, defendant challenges the jury's award of damages. In the unpublished portion of this decision, we reject defendant's former argument. In the published portion of this decision, we hold that the trial court erred in (1) instructing the jury that the aggravation of a preexisting condition constitutes a separate element of damages and (2) tendering to the jury an itemized verdict form listing the aggravation of a preexisting condition as a separate element of damages. Accordingly, we affirm in part, vacate in part, and remand this cause for further proceedings.

## I. BACKGROUND

The record indicates that on the morning of November 10, 1998, plaintiff was traveling east in the innermost lane of Broadway in Rockford. Defendant was in her vehicle traveling directly behind plaintiff's vehicle. There was a delivery van in front of plaintiff's vehicle and another automobile in front of the delivery van.

At the intersection of Broadway and Eastmoreland, the vehicles stopped at a traffic light. When the traffic signal turned green, the vehicles proceeded through the intersection. The car in front of the van slowed down to make a left turn. According to defendant, a short time later, the delivery van "dipped like he slammed on his brakes." Defendant then observed plaintiff apply her brakes. Defendant slammed on her brakes but was unable to avoid a collision with plaintiff's vehicle. Defendant described the collision as a "bump" and estimated that her speed just prior to the collision was between 5 and 10 miles per hour. Defendant testified that her air bag did not deploy and that, although she did not observe any damage to either her vehicle or plaintiff's vehicle, there was a "paint transfer" between the two automobiles. Following the collision, defendant exited her vehicle and asked plaintiff if she was okay. Plaintiff responded that her back hurt. Defendant called 9-1-1, and plaintiff was transported to a hospital by ambulance.

Plaintiff testified that as a result of the impact, a purse, cellular telephone, and bagged lunch that were on the passenger seat of her car were thrown to the floor. In addition, plaintiff stated that at the moment of impact, her body "went suddenly forward and came back against the seat," her neck "snap[ped] back," and her stomach hit the steering wheel, causing a bruise. After the accident, plaintiff experienced neck discomfort and a burning sensation between her

shoulder blades. At the emergency room, plaintiff underwent X rays of the cervical area.

Plaintiff recalled that between 1993 and 1996, she suffered from stiffness of the neck due to a fall. In July 1996, plaintiff awoke with an extremely stiff neck. Plaintiff's physician, Lydia Savic, recommended heat and muscle relaxers to alleviate the stiffness. These treatments did not resolve the discomfort, and Dr. Savic referred plaintiff to Dr. Buckingham. Between July 1996 and December 1996, Dr. Buckingham treated plaintiff with heat, muscle relaxers, and epidurals. Eventually, Dr. Buckingham recommended surgery, which plaintiff underwent on December 27, 1996. The surgery resolved her neck problem, and in February 1997, Dr. Buckingham released plaintiff to Dr. Savic's care.

Two days after the accident, plaintiff visited Dr. Savic's office and was referred for an MRI and prescribed pain medication. Eventually, Dr. Savic referred plaintiff to Dr. Manno, with whom she began treatment on or about November 23, 1998. Despite undergoing physical therapy and traction, plaintiff continued to experience pain and was taking Vicodin. In February 1999, plaintiff underwent a surgical procedure performed by Dr. Manno. Plaintiff recalled that since the surgery, the right side of her neck had improved greatly, but the left side of her neck had not. Subsequently, plaintiff returned to the care of Dr. Savic.

Plaintiff testified that she was given an off-work slip and that she did not work from the date of the accident until April 7, 2000, due to the pain she was experiencing. Prior to the accident, plaintiff worked at Rockford Clinic. When she returned to work in April 2000, however, plaintiff managed a sandwich shop. She eventually returned to the medical field in October 2001, and, at the time of trial, worked as a certified medical assistant in the field of obstetrics and gynecology. Plaintiff testified that she is no longer able to perform certain duties due to neck pain. Plaintiff calculated the amount of wages she lost during the time she was out of work as $25,704.68.

Plaintiff testified that despite the surgery, she has trouble turning her head to the left. In addition, plaintiff testified that she can no longer crochet, do ceramics, play video games, or carry her laundry or groceries. She also stated that she is limited in the time she can spend doing certain activities, such as typing, vacuuming, cleaning the bathroom, mopping floors, and changing sheets. Moreover, she does not sleep well at night. Plaintiff testified that her vehicle sustained damage to the bumper. Admitted into evidence was the repair bill, totaling $939.28.

Following deliberations, the jury returned a verdict in plaintiff's

favor. The jury awarded damages in the amount of $190,939.28. The jury itemized the damages as follows:

| | |
|---|---|
| Aggravation of a Preexisting Condition | $ 75,000.00 |
| Disfigurement | $ 500.00 |
| Future Pain and Suffering | $ 45,313.19 |
| Medical Care and Treatment | $ 43,482.23 |
| Lost Earnings | $ 25,704.58 |
| Car Repair | $ 939.28 |
| TOTAL | $190,939.28. |

Defendant filed a posttrial motion seeking judgment notwithstanding the verdict, a new trial, or a remittitur. The trial court denied defendant's motion, and this appeal ensued.

## II. ANALYSIS

■ As a preliminary matter, we point out that defendant's brief violates Supreme Court Rule 341(e)(7) (210 Ill. 2d R. 341(e)(7)). Specifically, Rule 341(e)(7) requires the appellant's brief to include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities *and the pages of the record relied on.*" (Emphasis added.) The majority of the argument section of defendant's opening brief does not cite to the pages of the record relied on. We elect not to strike defendant's brief, because the statement of facts contains sufficient references to the record on appeal. Nevertheless, we remind counsel that our supreme court rules are not mere technicalities or suggestions. *Tires 'N Tracks, Inc. v. Dominic Fiordirosa Construction Co.*, 331 Ill. App. 3d 87, 95 (2002). We admonish counsel to adhere to the rules in the future.

### A. Jury Verdict

The material in this section is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

### B. New Trial or Remittitur

Defendant requests a new trial or a remittitur. In support of this claim, defendant argues that (1) the trial court erred in issuing instructions to the jury that allowed it to award "duplicative or overlapping damages"; (2) the evidence was insufficient to substantiate any claim for the aggravation of a preexisting condition; (3) the evidence was insufficient to substantiate any claim for loss of wages; (4) the evidence was insufficient to substantiate any claim for future pain and suffering; (5) the trial court erred in permitting the jury to consult a mortality table in fixing damages; and (6) the evidence was insufficient to

substantiate a claim for medical care and treatment. We find the first issue dispositive.

## 1. Duplicative or Overlapping Damages

Defendant alleges that the trial court committed reversible error when, over defendant's objection, it granted plaintiff's request to include, as a separate element of damages, the aggravation of a preexisting condition. According to defendant, this resulted in duplicative or overlapping damages. We agree and hold that while a jury may consider the aggravation of a preexisting condition in reaching its verdict, the aggravation of a preexisting condition is not a separate element of damages. Accordingly, it is improper for the trial court to instruct the jury to separately award for the aggravation of a preexisting condition and to provide the jury an itemized verdict form listing the aggravation of a preexisting condition as a separate element of damages. Thus, we remand this cause for a new trial on damages.

Our analysis begins with an examination of the instructions tendered to the jury in the present case. At the jury-instruction conference, plaintiff tendered Illinois Pattern Jury Instructions, Civil, No. 30.01 (2000) (hereinafter IPI Civil (2000) No. 30.01). IPI Civil (2000) No. 30.01 provides:

> "If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the [negligence] [wrongful conduct] [of the defendant], [taking into consideration the nature, extent and duration of the injury].
>
> [*Here insert the elements of damages which have a basis in the evidence.*]
>
> Whether any of these elements of damages has been proved by the evidence is for you to determine." IPI Civil (2000) No. 30.01.

Plaintiff sought to have the jury consider damages for the aggravation of her preexisting condition (IPI Civil (2000) No. 30.03), disfigurement (IPI Civil (2000) No. 30.04), loss of a normal life (IPI Civil (2000) No. 30.04.01), pain and suffering (IPI Civil (2000) No. 30.05), medical care (see IPI Civil (2000) No. 30.06), and lost earnings (IPI Civil (2000) No. 30.07). Thus, the instruction tendered to the jury read:

> "If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him [*sic*] for any of the following elements of damages proved by the evidence to have resulted from the negligence of the defendant, taking into consideration the nature, extent and duration of the injury.
>
> The aggravation of any pre-existing ailment or condition.

The disfigurement resulting from the injury.

Loss of a normal life experienced and reasonably certain to be experienced in the future.

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries.

The reasonable expense of necessary medical care, treatment, and services received.

The value of earnings lost.

Whether any element of these damages has been proved by the evidence is for you to determine."

When IPI Civil (2000) No. 30.03 is given, the Notes on Use for that instruction direct that IPI Civil (2000) No. 30.21 also be given. Accordingly, over defendant's objection, the court tendered to the jury IPI Civil (2000) No. 30.21, which reads:

"If you decide for the plaintiff on the question of liability, you may not deny or limit the plaintiff's right to damages resulting from this occurrence because any injury resulted from an aggravation of a pre-existing condition."

In conjunction with these instructions, the following verdict form was tendered to the jury over defendant's objection:

"We, the jury, find for Plaintiff, Connie Hess, and against Defendant, Michelle Espy. We assess the damages in the sum of $_____, itemized as follows:

The aggravation of any pre-existing ailment or condition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

The disfigurement resulting from the injury . . . . . . . . . .$_____

Loss of a normal life experienced and reasonably certain to be experienced in the future . . . . . . . . . . . . . . $_____

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

The reasonable expense of necessary medical care, treatment, and services received . . . . . . . . . . . . . . . . . . . $_____

The value of earnings lost. . . . . . . . . . . . . . . . . . . . . . . . . $_____."

The verdict form was based on IPI Civil (2000) No. B45.01.A. The jury awarded plaintiff damages in the amount of $190,939.28, $75,000 of which was for the aggravation of a preexisting ailment or condition.

All of the instructions at issue here, as well as the itemized verdict form used in this case, were authorized by Illinois Pattern Jury Instructions. Supreme Court Rule 239(a) directs the trial court to use IPI instructions when applicable:

"(a) Use of IPI Instruction; Requirements of Other Instructions. Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to

the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law." 177 Ill. 2d R. 239(a).

However, our supreme court has observed that IPI instructions are not exempt from challenge. *Powers v. Illinois Central Gulf R.R. Co.*, 91 Ill. 2d 375, 385 (1982). Indeed, in *Powers*, the supreme court pointed out that the IPI instructions do not receive advance approval from the court and that the instructions are approved or rejected only once they are questioned and considered by the judiciary. *Powers*, 91 Ill. 2d at 385. Whether IPI Civil (2000) No. 30.03 accurately states the law is subject to *de novo* review. *Luye v. Schopper*, 348 Ill. App. 3d 767 (2004).

In *Powers*, the defendant argued that the trial court erred in tendering to the jury an instruction and itemized verdict form that directed the jury to award as a separate element of damages the "nature, extent and duration of the injury." *Powers*, 91 Ill. 2d at 377-78. The defendant contended that "the nature, extent and duration of the injury" was not compensable as an element of damages separate and apart from the other elements of damages in the instructions (*e.g.*, disability, pain and suffering) and that instructing the jury as such led to a duplicative recovery for the plaintiff. *Powers*, 91 Ill. 2d at 378. The supreme court agreed. *Powers*, 91 Ill. 2d at 384.

The instruction tendered to the jury in *Powers* was based on the Illinois Pattern Jury Instructions. The *Powers* court noted, however, that the cases cited in the IPI instructions for the notion that "the nature, extent and duration of the injury" is a separate element of damages did not support that proposition. *Powers*, 91 Ill. 2d at 381. The court then held that a jury's award for both "the nature, extent and duration of the injury" and elements such as disability and pain and suffering results in a double recovery because the latter elements necessarily involve an examination and assessment of the nature, extent, and duration of damages. *Powers*, 91 Ill. 2d at 382. In other words, while the jury may consider the nature, extent, and duration of an injury, the trial court may not instruct the jury that the nature, extent, and duration of an injury is a separate element of damages. *Powers*, 91 Ill. 2d at 383-84.

The court in *Smith v. City of Evanston*, 260 Ill. App. 3d 925 (1994), the principal case cited by defendant, found the reasoning in *Powers* persuasive in assessing whether an award for both the aggravation of a preexisting condition and the other elements of damages constituted a double recovery. In *Smith*, the plaintiff injured her back in an automobile accident. The plaintiff had a history of back problems prior to the accident. The jury was provided an itemized verdict form

and it awarded the plaintiff damages for medical care, lost wages, past pain and suffering, and the aggravation of a preexisting condition. On appeal, the *Smith* court concluded that the aggravation of a preexisting condition is not a separate element of damages because it overlaps with awards for other elements of damages. *Smith*, 260 Ill. App. 3d at 935-36. In reaching this decision, the court first examined the history of itemized verdicts in Illinois and the use of IPI instructions on damages. The court noted that itemized verdicts in personal injury cases were not mandated by Illinois law until 1976. Since then, courts have used the IPI instructions to determine which separate categories of damages to include on the itemized verdict form. However, the court pointed out that most of the IPI instructions were based on law that predates the use of itemized verdicts and that the instructions have not been revised to take itemization into consideration. *Smith*, 260 Ill. App. 3d at 933. More importantly, the court pointed out that, when approved, the IPI instructions were intended "only to inform jurors of considerations that should affect the determination of what *single sum* would fully and fairly compensate a plaintiff for losses." (Emphasis added.) *Smith*, 260 Ill. App. 3d at 934.

The *Smith* court then looked to the *Powers* decision, holding:

"Just as the court in *Powers* could find no measure for the nature of the injury as a separate element of damages, we find no measure for the value of aggravation of a preexisting condition that is separate from the other elements of damages. A jury appraising the monetary value of aggravation of the condition needs to look to the increase in medical costs, the earnings lost which would not have been lost by reason of the preexisting condition alone, the increase in pain and suffering, and the worsening of disabilities and disfigurement. *** An award for aggravation of a preexisting condition overlaps with awards for all of the other elements of damages, so inclusion of aggravation of conditions as a separate element leads to the same possibility of overcompensation that led the court in *Powers* to rule against the use of nature of the injury as a separate element of damages, despite the approval of that as a separate category of damages in the IPI instructions then in effect. *** We hold that under the reasoning of *Powers*, aggravation of a preexisting condition is not a separate element of damages. It is, like the nature, extent and duration of the injury, a matter to take into account when assessing the proper, separable elements of damages." *Smith*, 260 Ill. App. 3d at 935-36.

Simply stated, the *Smith* court held that the aggravation of a preexisting condition is not a separate element of damages, because it duplicates or overlaps recovery for other elements of damages. *Smith*, 260 Ill. App. 3d at 936. The Fourth District adopted *Smith* in *Boehm*

*v. Ramey,* 329 Ill. App. 3d 357, 365 (2002), holding that an award of damages for the aggravation of a preexisting condition overlaps with an award obtained for all of the other elements of damages. See also *Tedeschi v. Burlington Northern R.R. Co.,* 282 Ill. App. 3d 445, 449-50 (1996) (holding that jury's award of damages for aggravation of a preexisting condition but not for any other category of damages recognized the possibility of duplicate recovery).

More recently, the First District reaffirmed its holding in *Smith* that the aggravation of a preexisting condition is not a separate element of damages. In *Luye,* 348 Ill. App. 3d 767, the plaintiff was injured while exiting a taxicab. The jury was instructed that the aggravation of a preexisting condition was a separate element of damages, and the itemized verdict form listed the aggravation of a preexisting condition as a separate element of damages. Ultimately, the jury returned a verdict in the plaintiff's favor, awarding the plaintiff damages in the amount of $247,580.45, $112,000 of which was for the aggravation of a preexisting condition. On appeal, the defendant challenged the propriety of the instruction and the verdict form listing the aggravation of a preexisting condition as a separate element of damages.

Taking a cue from *Powers,* the *Luye* court examined the two cases cited in the comment to the IPI instructions for the proposition that the aggravation of a preexisting condition is a separate element of damages. See IPI Civil (2000) No. 30.03; *Wheeler v. Roselawn Memory Gardens,* 188 Ill. App. 3d 193 (1989); *Behles v. Chicago Transit Authority,* 346 Ill. App. 220, 231 (1952). The court noted that while the juries in both *Wheeler* and *Behles* were allowed to consider the aggravation of a preexisting condition when determining damages, neither case explicitly held that the aggravation of a preexisting condition is a separate element of damages. *Luye,* 348 Ill. App. 3d at 776. Indeed, our independent review of *Wheeler* and *Behles* indicates that the panels in those cases were not even asked to address the issue of the propriety of the aggravation of a preexisting condition as a separate element of damages. See *Wheeler,* 188 Ill. App. 3d at 203-04 (addressing whether instruction, directing jury that the plaintiff's right to recover damages is not limited or barred because any injury resulted from the aggravation of a preexisting condition, must accompany Illinois Pattern Jury Instructions, Civil, No. 30.03 (2d ed. 1971); *Behles,* 346 Ill. App. at 231-32 (noting that the defendant's objection to instruction was based on failure to request special damages and that there was no evidence that the accident aggravated a preexisting condition).

In support of the proposition that the aggravation of a preexisting condition constitutes a separate element of damages, plaintiff relies on

*Kravcik v. Golub & Co.*, 286 Ill. App. 3d 406 (1996). The *Kravcik* court rejected *Smith*, stating that *Smith* "deviated from the plethora of cases holding that the aggravation of a preexisting condition is a separate element of compensable damages" and "ignored prior well-reasoned case law and the established pattern jury instructions." *Kravcik*, 286 Ill. App. 3d at 412-13.

The "plethora" of cases referred to in *Kravcik* consists of *Balestri v. Terminal Freight Cooperative Ass'n*, 76 Ill. 2d 451 (1979), *Ficken v. Alton & Southern R.R. Co.*, 255 Ill. App. 3d 1047 (1993), *Wheeler*, 188 Ill. App. 3d 193, and *Behles*, 346 Ill. App. 220. However, as the *Luye* court pointed out, neither *Wheeler* nor *Behles* holds that the aggravation of a preexisting condition is a separate compensable element of damages. Likewise, the *Balestri* court did not address whether the aggravation of a preexisting condition is a separate compensable element of damages. Further, while *Ficken* does state that the aggravation of a preexisting ailment or condition is a separate element of compensable damages (*Ficken*, 255 Ill. App. 3d at 1056), *Ficken* predated the *Smith* case and relied on *Behles* for this proposition.[1] Because of the dubious nature of the authorities cited by *Kravcik*, we disagree with the notion that *Smith* ignores well-reasoned case law. To the contrary, the *Smith* decision relies principally on *Powers*, a well-reasoned decision from our supreme court. Moreover, while we do not dispute that a holding that the aggravation of a preexisting condition does not constitute a separate compensable element of damages disregards the IPI instructions, the rationale for such a holding is simple: the authority for the proposition is not supported by the case law set forth in the comments to the IPI instructions.

Curiously, while the *Kravcik* court approved of instructing the jury that the aggravation of a preexisting condition is a separate element of damages, it rejected the proposition that the jury should be provided with an itemized verdict form listing the aggravation of a preexisting condition as a separate element of damages. *Kravcik*, 286 Ill. App. 3d at 414 ("In light of the foregoing, we reverse the trial court's decision, finding that the court abused its discretion when it failed to properly instruct the jury as to IPI Civil 3d No. 30.03, but we affirm the trial court's rejection of the instruction regarding the itemization for the aggravation of any preexisting ailment or condition as a separate item of damages in the verdict form"). Thus, *Kravcik* is not entirely at odds with the *Smith* line of cases.

---

[1] The *Ficken* court also cites to *Grimming v. Alton & Southern R.R. Co.*, 204 Ill. App. 3d 961, 983 (1990), for the proposition that the aggravation of a preexisting condition is a separate element of damages. However, like *Behles*, the *Grimming* court does not hold such.

■ After considering the cases cited above, we find the reasoning in *Smith* and its progeny more persuasive than *Kravcik*. We hold that allowing the jury to separately compensate a party for the aggravation of a preexisting condition overlaps with awards for the other elements of damages. As the *Smith* court stated, "[a] jury appraising the monetary value of aggravation of the condition needs to look to the increase in medical costs, the earnings lost which would not have been lost by reason of the preexisting condition alone, the increase in pain and suffering, and the worsening of disabilities and disfigurement." *Smith*, 260 Ill. App. 3d at 935. In other words, although the jury may consider the aggravation of a preexisting condition when assessing other elements of damages, it is improper for the trial court to instruct the jury to separately award for the aggravation of a preexisting condition and to provide the jury an itemized verdict form listing the aggravation of a preexisting condition as a separate element of damages. Because the jury in this case was instructed that the aggravation of a preexisting condition is a separate element of damages and because the jury compensated plaintiff separately for the aggravation of a preexisting condition, we grant defendant's request for a new trial on damages.

## 2. Remaining Issues

■ Before concluding, we briefly note defendant's assertion that there was insufficient evidence to substantiate any claim for damages for the aggravation of a preexisting condition, lost wages, future pain and suffering, and medical care and treatment. Because we are remanding the cause for a new trial on damages, these issues are rendered moot. See *Boehm*, 329 Ill. App. 3d at 367 (refusing to address propriety of damages where court ordered new trial on damages). However, we do address one issue that may arise on remand. According to defendant, a mortality table instruction is proper only where there is evidence of a permanent injury. See *Simon v. Van Steenlandt*, 278 Ill. App. 3d 1017, 1020 (1996). Plaintiff does not dispute this proposition. Accordingly, on remand, a mortality table instruction shall be tendered to the jury only if there is evidence of a permanent injury.

## III. CONCLUSION

For the aforementioned reasons, we affirm the judgment of the circuit court of Winnebago County on the issue of liability, we vacate

the jury's award of damages, and we remand the cause for a new trial on damages only.

Affirmed in part and vacated in part; cause remanded.

O'MALLEY, P.J., and BOWMAN, J., concur.