ANNETTE COMPTON, Plaintiff-Appellee, v. RODRIGO UBILLUZ, Defendant-Appellant (Fred Nour *et al.*, Defendants).

Second District   No. 2—04—0049

Opinion filed November 10, 2004.—Rehearing denied December 21, 2004.

864

David J. Cahill and Christian A. Sullivan, both of Swanson, Martin & Bell, of Lisle, and Linda E. Spring, of Swanson, Martin & Bell, of Libertyville, for appellant.

Edward J. Walsh, Jr., Thomas L. Knight, and Bradley N. Pollock, all of Walsh, Knippen, Knight & Diamond, Chtrd., of Wheaton, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

In 1987, plaintiff, Annette Compton, was 48 years old when she was diagnosed with cervical cancer, which metastasized to her lungs. Plaintiff underwent several surgical procedures and chemotherapy, and she experienced pulmonary problems and neurological side effects from the treatment. Ten years later, plaintiff presented different neurological symptoms and obtained the services of defendant Rodrigo Ubilluz, M.D. (hereinafter defendant), on August 4, 1997. Defendant failed to diagnose a vitamin $B_{12}$ deficiency that had caused a subacute combined degeneration of plaintiff's spinal cord. The problem was eventually diagnosed 10 months after plaintiff first visited defendant.

On June 6, 2000, plaintiff filed a complaint for medical malpractice. Defendant admitted that he breached a duty to diagnose the vitamin $B_{12}$ deficiency, but he disputed the issues of proximate cause and dam-

ages. Defendants Central Du Page Hospital and Central Du Page Health settled with plaintiff and were dismissed before trial. Following a lengthy trial, a jury found that defendant Fred Nour, M.D., was not liable. However, the jury returned a $1.73 million verdict against defendant, and the trial court entered a judgment of $1.68 million to account for the pretrial settlement. Defendant appeals, contending that the trial court committed reversible error by (1) admitting the testimony of plaintiff's damages expert, Alan Spector, M.A.; (2) using Illinois Pattern Jury Instructions, Civil, Nos. 30.03 and 30.21 (2000) (hereinafter IPI Civil (2000) Nos. 30.03, 30.21), which address aggravation of a preexisting medical condition; and (3) permitting plaintiff's counsel to inform the jury of the timing of defendant's admission regarding the diagnosis and to otherwise engage in "histrionic conduct" during closing argument. We affirm.

Because the parties are familiar with the facts, we set forth the relevant evidence as part of our analysis of each issue.

### 1. Motion *In Limine*.

Defendant initially argues that the trial court committed reversible error when it denied defendant's pretrial motion *in limine* that sought to bar Spector from rendering an opinion on plaintiffs' damages. In denying plaintiff's motion *in limine*, the trial court ruled that defendant could cross-examine Spector and introduce other evidence of plaintiff's expenses that were caused by her preexisting condition before defendant negligently failed to diagnose her vitamin $B_{12}$ deficiency. Because Spector is not a physician, the court precluded him from testifying to any of plaintiff's future health care needs that required a physician's prescription or order. Defendant's counsel cross-examined Spector but did not introduce any evidence to rebut his testimony.

Plaintiff elicited testimony to establish Spector's qualifications as an expert. Spector testified that he has served for 28 years as executive director of Glenkirk, an organization of 300 employees and 49 facilities that assists people with disabilities. In addition to his administrative tasks, Spector recommends therapeutic life care plans and helps families modify their homes or construct new ones to accommodate disabled family members. Spector earned a bachelor's degree in special education and a master's degree in the administration of programs for people with disabilities.

Spector visited plaintiff in her home for several hours on March 9, 2002. Plaintiff answered a 14- or 15-page questionnaire so Spector could recommend a program that would be "reasonable, economical, and productive" to help her lead "a[s] safe, healthy, and as pleasant a

life as she's capable of." Spector testified that he did not consider the cause of plaintiff's condition and focused only on planning for her future. Spector explained that plaintiff is wheelchair-bound and experiences pain, sensory deficits, tingling, muscle weakness, colostomy, and incontinence daily. Plaintiff lives in a two-story unit, but she cannot reach the second floor, which contains her bedroom and the only full bathroom. Because a conversion of the current home would be too costly, Spector recommended a single-floor residence with wide wheelchair-accessible doors and hallways and a kitchen with low countertops. Spector also recommended a power wheelchair, which he estimated would cost $10,000 to $20,000 because they are rare. Spector also estimated that a suitable home would cost $250,000. Lifts, grab rails, and other devices for the activity program would cost an additional $5,000 to $10,000. Spector also recommended a voice-activated computer for $10,000 and a van with a wheelchair lift for $30,000 to $35,000. An annual depreciation fund of $16,000 would defray the cost of replacing the van and the other capital improvements. Spector also testified at length about the cost of and reasons for recommending certain therapeutic services, such as weekly activity therapy and occupational therapy, a rehabilitative development program, a visiting health care nurse, and a personal attendant.

■ Expert testimony is admissible at trial when the expert has knowledge or experience not common to a layperson and that knowledge or experience would aid the trier of fact in determining the facts at issue. The expert's testimony is admissible if it aids the trier of fact by explaining a factual issue beyond the fact finder's ordinary knowledge, but the opinion is inadmissible if it merely recites a legal conclusion. The admission of expert testimony is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Martin v. Sally*, 341 Ill. App. 3d 308, 315 (2003).

Defendant argues that plaintiff failed to establish that defendant's breach of his duty to diagnose the vitamin deficiency proximately caused plaintiff's need for the new home, special equipment, and therapy that Spector recommended. In his brief, defendant presents the related arguments that plaintiff failed to establish a medical foundation for Spector's testimony and that Spector lacked expertise to opine about the type and cost of housing that plaintiff needed.

■ However, defendant incorrectly disregards the testimony of Dr. Joseph Berger, who specifically opined that timely vitamin $B_{12}$ injections would have prevented the degeneration of plaintiff's spinal cord and the symptoms and disabilities that followed. Dr. Berger opined that plaintiff could have walked without a walker and would not have needed a wheelchair if defendant had diagnosed the vitamin deficiency

and provided appropriate treatment when he had the opportunity to do so. Dr. Berger's testimony was corroborated by Dr. Steven Lewis, plaintiff's neurologist, who testified that plaintiff's damaged spinal cord was the result of defendant's failure to diagnose the problem. In turn, Spector's recommendations were primarily directed toward plaintiff's inability to walk. Defendant challenges Spector's testimony only and does not dispute the qualifications of any of plaintiff's other experts. We agree with plaintiff that, once her physicians testified that her condition was caused by defendant's breach of his duty to diagnose and treat plaintiff, there was an adequate foundation for Spector's testimony regarding treatment options that did not require a physician's prescription. We note that defendant did not take the opportunity to introduce his own evidence that Spector's recommendations addressed symptoms for which defendant was not responsible. Testimony offered by expert witnesses is to be judged by the same rules of weight and credibility applied to testimony of other witnesses, which are questions of fact for a jury, and, in the absence of evidence to the contrary, the jury chose to credit Spector's opinions in this case. See *Morus v. Kapusta*, 339 Ill. App. 3d 483, 492 (2003).

Defendant cites the well-settled rule that courts require that medical opinions be based upon a reasonable degree of medical certainty. See, *e.g.*, *Mengelson v. Ingalls Health Ventures*, 323 Ill. App. 3d 69, 74-75 (2001). He also notes that proximate cause is not established where the medical expert testimony of causal connection is " 'contingent, speculative or merely possible.' " *Mengelson*, 323 Ill. App. 3d at 75, quoting *Newell v. Corres*, 125 Ill. App. 3d 1087, 1092 (1984). However, in this case, the trial court expressly limited Spector's testimony to matters that did not involve a physician's prescription. Plaintiff used physicians to introduce medical testimony regarding causation.

Defendant also asserts that Spector lacked expertise to opine on the cost of a more appropriate home for plaintiff. However, Spector testified that he assisted many disabled people with purchasing and modifying their homes. Furthermore, Spector completed similar projects involving Glenkirk's 30 community residences. An expert's testimony will assist the jury when such testimony offers knowledge and application of principles "beyond the ken of the average juror." *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 546 (1995). Evidence is "beyond the ken" of the average juror when it involves knowledge or experience that a juror generally lacks. *Rinesmith v. Sterling*, 293 Ill. App. 3d 344, 348 (1997). In light of this standard, we conclude that the trial court did not abuse its discretion in permitting Spector to offer recommendations and price estimates for a new home, special equipment, and therapy for plaintiff.

## 2. Jury Instructions.

Defendant next argues that the trial court erred in using IPI Civil (2000) Nos. 30.03 and 30.21 because they incorrectly stated the law by allowing for a double recovery. Therefore, defendant contends, he is entitled to a remittitur. "A remittitur is an agreement by the plaintiff to relinquish, or remit, to the defendant that portion of the jury's verdict which constitutes excessive damages [citations] and to accept the sum which has been judicially determined to be properly recoverable damages [citation]. The only alternative to a remittitur in a case where the verdict exceeds the damages properly proven [citations], and/or where the verdict can be accounted on the sole basis that the jury acted from some improper motive [citation], such as passion or prejudice [citation], is for the trial judge to order a new trial [citations]." *Haid v. Tingle*, 219 Ill. App. 3d 406, 411 (1991).

At the jury-instruction conference, plaintiff tendered IPI Civil (2000) No. 30.01, which provides:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the [negligence] [wrongful conduct] [of the defendant], [taking into consideration the nature, extent and duration of the injury].

[*Here insert the elements of damages which have a basis in the evidence.*]

Whether any of these elements of damages has been proved by the evidence is for you to determine." Illinois Pattern Jury Instructions, Civil, No. 30.01 (2000).

Plaintiff sought to have the jury consider damages for the aggravation of her preexisting condition (IPI Civil (2000) No. 30.03), loss of a normal life (IPI Civil (2000) No. 30.04.01), pain and suffering (IPI Civil (2000) No. 30.05), medical care (see IPI Civil (2000) No. 30.06), and past and future caretaking (IPI Civil (2000) No. 30.09). The instruction tendered to the jury included all of these elements of damages and, thus, provided as follows:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate her for any of the following elements of damages proved by the evidence to have resulted from the negligence of the defendant or defendants, taking into consideration the nature, extent and duration of the injury.

An aggravation of a preexisting condition or a condition which rendered the plaintiff more susceptible to injury.

Loss of a normal life experienced and reasonably certain to be experienced in the future;

The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries.

The reasonable expense of necessary medical care, treatment, and services received;

The reasonable expense of necessary help which has been required as a result of her injury, and the present cash value of such expense and any capital expenses reasonably certain to be required in the future.

Whether any element of these damages has been proved by the evidence is for you to determine."

When IPI Civil (2000) No. 30.03 is given, the Notes on Use for that instruction direct that IPI Civil (2000) No. 30.21 also be given. Accordingly, over defendant's objection, the court tendered to the jury IPI Civil (2000) No. 30.21, which provides, "[i]f you decide for the plaintiff on the question of liability, you may not deny or limit the plaintiff's right to damages resulting from this occurrence because any injury resulted from an aggravation of a preexisting condition." Illinois Pattern Jury Instructions, Civil, No. 30.21 (2000).

The verdict form conformed to the instructions and provided for the itemization of each of the elements of damages except one: the aggravation of plaintiff's preexisting condition. The jury found for plaintiff and itemized her damages as follows: $350,000 for loss of a normal life, $650,000 for pain and suffering, $55,000 for medical care, and $675,000 for past and future caretaking.

■ On appeal, a litigant waives the right to object to instructions or verdict forms that are given to a jury when the party fails to make a specific objection during the jury-instruction conference or when the form is read to the jury. *Ozik v. Gramins*, 345 Ill. App. 3d 502, 520 (2003). Even if the litigant properly objects to an instruction or verdict form, the litigant must still submit a remedial instruction or verdict form to the trial court. Timely objection and remedial submission assist the trial court in correcting the problem and prohibit the challenging party from gaining an advantage by obtaining reversal based on the party's own failure to act. *Ozik*, 345 Ill. App. 3d at 520. Defendant did not submit a remedial instruction in this case and instead argued that IPI Civil (2000) Nos. 30.03 and 30.21 should have been omitted from the instructions and verdict form entirely. We conclude that defendant waived the jury-instruction issue by failing to submit a remedial instruction with the allegedly objectionable portions modified or redacted. Nevertheless, the waiver rule is a limitation on the parties and not this court (*Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 504-05 (2002)); therefore, we elect to review defendant's argument and determine that it lacks merit.

The instructions at issue here were authorized by the Illinois Pattern Jury Instructions. Supreme Court Rule 239(a) directs the trial court to use IPI instructions when they apply:

"(a) Use of IPI Instruction; Requirements of Other Instructions. Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law." 177 Ill. 2d R. 239(a).

Our supreme court has observed that IPI instructions are not exempt from challenge. *Powers v. Illinois Central Gulf R.R. Co.*, 91 Ill. 2d 375, 385 (1982). In *Powers*, the supreme court illustrated that the IPI instructions do not receive advance approval from the court and that the instructions are approved or rejected only after the judiciary considers them. *Powers*, 91 Ill. 2d at 385. Generally, a trial court has discretion to determine the appropriate jury instructions, and its determination will be reversed only for an abuse of discretion. *Ozik*, 345 Ill. App. 3d at 520. However, this court has recently held that whether IPI Civil (2000) No. 30.03 accurately states the law is subject to *de novo* review. *Hess v. Espy*, 351 Ill. App. 3d 490, 496 (2004); see also *Luye v. Schopper*, 348 Ill. App. 3d 767, 773 (2004) (First District).

■ Like in this case, the trial court in *Hess* provided the jury with an instruction authorizing recovery for the aggravation of a preexisting condition, pursuant to IPI Civil (2000) Nos. 30.03 and 30.21. However, unlike in this case, the verdict form in *Hess* also provided for itemized damages for the aggravation of a preexisting condition as a separate element of damages. This court remanded the cause for a new trial on damages, holding that "it is improper for the trial court to instruct the jury to separately award for the aggravation of a preexisting condition and to provide the jury an itemized verdict form listing the aggravation of a preexisting condition as a separate element of damages." *Hess*, 351 Ill. App. 3d at 494. Defendant misinterprets *Hess* in arguing that the case prohibits any use of IPI Civil (2000) Nos. 30.03 and 30.21 in this case. In *Hess*, we emphasized that allowing the jury to separately compensate a party for the aggravation of a preexisting condition overlaps with awards for the other elements of damages, but that a jury may nevertheless consider the aggravation of a preexisting condition when assessing other elements of damages. *Hess*, 351 Ill. App. 3d at 500.

This case is easily distinguishable from *Hess*. Here, the instructions directed the jury to consider the aggravation of plaintiff's preexisting condition, but the verdict form did not permit the jury to

separately compensate plaintiff for that element. Accordingly, we conclude that the trial court did not err in administering IPI Civil (2000) Nos. 30.03 and 30.21 and that the jury did not award duplicate damages based on a consideration of the aggravation of plaintiff's preexisting condition. We reject defendant's request for a remittitur accordingly.

### 3. Closing Argument.

■ Defendant next argues that the trial court committed reversible error in allowing plaintiff's counsel, Edward Walsh, to inform the jury of the timing of defendant's admission of negligence. Defendant admitted during his deposition more than two years before trial that a reasonably well-qualified neurologist would have learned by October 16, 1997, that plaintiff was vitamin $B_{12}$ deficient. During closing argument, Walsh stated that "[defendant], several months before trial, has admitted that he was negligent in this case." Walsh also stated that defendant "admitted that he was negligent in failing to secure [the vitamin $B_{12}$ lab report] when it was available" during a period of five or six office visits.

A motion *in limine* permits a party to obtain an order excluding inadmissible evidence and prohibiting comment concerning such evidence during closing argument. The moving party will thereby be protected from any prejudicial impact from the comment and the making of objections in front of the jury. However, a court is disadvantaged in ruling on a motion *in limine* because it is considered in a vacuum, before the presentation of the full evidence at trial that may justify admission or require exclusion. Trial judges should attempt to enter narrow *in limine* orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. An unclear order *in limine* is worse than no order at all; even if the court concludes that the evidence is inadmissible, it has the discretion to deny the motion *in limine* before trial. *Cunningham v. Millers General Insurance Co.*, 227 Ill. App. 3d 201, 205 (1992). It is well settled that both the motion *in limine* and the resulting order should be in writing to prevent confusion and misunderstanding during trial. *Stennis v. Rekkas*, 233 Ill. App. 3d 813, 825 (1992); *Cunningham*, 227 Ill. App. 3d at 205.

Once a motion *in limine* is granted, the movant must be vigilant and object when evidence is presented which may violate the order. The purpose of an *in limine* order is to exclude inadmissible evidence, not to create a trap that results in a new trial if the court determines in retrospect that the order was violated. *Cunningham*, 227 Ill. App.

3d at 206. A new trial may be granted for a violation of an *in limine* order only if the order's prohibitions are specific, the violation is clear, and the violation deprived the moving party a fair trial. *Kwon v. M.T.D. Products, Inc.*, 285 Ill. App. 3d 192, 198 (1996).

Even though the trial court expressly directed the parties to submit any motions *in limine* in writing in this case, defendant has not provided this court with a written motion or order directed toward the timing of defendant's admission. It appears that defendant presented only an oral motion *in limine* and that the trial court reserved ruling on the motion. Defendant insists that the trial court eventually granted the motion "off the record." The inherent confusion and misunderstanding that stem from such an order render it impossible to review. See *Stennis*, 233 Ill. App. 3d at 825; *Cunningham*, 227 Ill. App. 3d at 205.

As appellant, defendant has the burden to present a sufficiently complete record of the trial proceedings to support a claim of error, and in the absence of such a record on appeal, we will presume that the trial court's order conformed with the law and had a factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts that arise from the incompleteness of the record will be resolved against the appellant. *Foutch*, 99 Ill. 2d at 392. Because defendant has failed to supply this court with an adequate record of his motion *in limine* or an order issued by the trial court on that motion, we resolve the issue against defendant.

■ Next we consider defendant's claim that the "histrionic conduct" of plaintiff's counsel during closing argument entitles him to a new trial. Defendant raised this issue by objecting at trial and seeking relief in a posttrial motion. After closing argument and outside the presence of the jury, the trial court admonished plaintiff's counsel, stating the following:

"First, I would like to make a matter of record here the three objections that were made during the closing rebuttal of Mr. Walsh [plaintiff's counsel] that were sustained, and certainly the record will not reflect what occurred that caused me to sustain the objections made, I believe, by both defense counsel.

The first was a literal throwing of a board prepared—a diagram, I believe, prepared by Mr. Cahill [defendant's counsel] which I find to be completely inappropriate during any type of argument of any kind, and I did sustain that objection; followed thereafter by a slamming of the [projection] screen, which I also found to be inappropriate.

Lastly, although there was no objection, but the rebuttal was concluded by writing on a board where, Mr. Walsh, you had previously been told not to do.

So I do admonish you for all those things, and I want the record to reflect what occurred in the courtroom since it certainly wasn't audible speech."

Counsel is afforded wide latitude in closing argument and may comment on the evidence, as well as any reasonable inference that can be drawn from the evidence. *Thornhill v. Midwest Physician Center of Orland Park*, 337 Ill. App. 3d 1034, 1053 (2003). Even where improper comments are made during closing argument, reversal is appropriate only where the comments substantially prejudiced the challenging party. *Ramirez v. City of Chicago*, 318 Ill. App. 3d 18, 26 (2000). Issues of the prejudicial effect of remarks made during closing argument are within the discretion of the trial court, and determinations regarding such issues will not be reversed absent a clear abuse of discretion. In determining whether there has been an abuse of discretion, we may not substitute our judgment for that of the trial court, or even determine whether the trial court exercised its discretion wisely. *Simmons v. Garces*, 198 Ill. 2d 541, 568 (2002).

Defendant relies upon *Manninger v. Chicago & Northwestern Transportation Co.*, 64 Ill. App. 3d 719 (1978), for his position that the judgment in this case should be reversed because Walsh's allegedly inflammatory argument deprived him of a fair trial. In *Manninger*, the plaintiff's counsel implied that defense counsel had coached the witnesses, and the appellate court reversed the judgment even though no objection was made. However, the appellate court emphasized that the argument was improper because the record did not support it. "It is only when there is something in the record affording a reasonable basis for the statement that charges of dishonesty, bad faith or insincerity in the defense is permissible." *Manninger*, 64 Ill. App. 3d at 729. Here, counsel's argument, though unduly emotional, was directed to the credibility, not the sincerity, of defendant's evidence and theory of the case. The trial court witnessed Walsh's entire closing argument, including his objectionable conduct, and the court saw how Walsh's behavior affected the jury. In denying defendant's post-trial motion, the court noted that the misconduct was brief and isolated and likely did not affect the verdict. The trial court was in a better position to observe Walsh's behavior, and the court mitigated the prejudice to defendant by sustaining the objections he raised. Because we must defer to the trial court in such matters, we conclude that, under these circumstances, the court did not abuse its discretion in denying defendant's posttrial motion for a new trial.

For these reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.