# Illinois Official Reports

## Appellate Court

*Compass Group v. Illinois Workers' Compensation Comm'n*,
2014 IL App (2d) 121283WC

| | |
|---|---|
| Appellate Court Caption | COMPASS GROUP, Appellant and Cross-Appellee, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Jeffrey Berman, Appellee and Cross-Appellant). |
| District & No. | Second District<br>Docket No. 2-12-1283WC |
| Filed<br>Supplemental opinion upon denial of rehearing | March 28, 2014<br><br>May 13, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings arising from a workers' compensation claim based on the back injuries claimant suffered when lifting a case of soda while working as a food-service manager, the Illinois Workers' Compensation Commission's findings that plaintiff injured his back when he lifted the soda and that his problems increased after a fall at his house shortly after the injury at work were upheld, the stipulation claimant and his employer entered into regarding various medical bills barred the employer from objecting to any of the terms of that agreement, and claimant's employer failed to show it was prejudiced by the denial of its motion for leave to conduct an evidence deposition of its own expert medical witness; however, the Commission's refusal to award claimant the expenses related to the modifications to his home recommended by his physical therapists was vacated and the cause was remanded to allow the Commission to evaluate the therapists' opinions on that issue. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-MR-700; the Hon. Bonnie M. Wheaton, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed in part and vacated in part; cause remanded. |
| Counsel on Appeal | Julie M. Schum, of Ganan & Shapiro, P.C., of Chicago, for appellant. |
| | Mark F. Slavin, of Slavin & Slavin, of Chicago, for appellee Jeffrey Berman. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. |
| | Presiding Justice Holdridge and Justices Hoffman, Harris, and Stewart concurred in the judgment and opinion. |

**OPINION**

## I. INTRODUCTION

Respondent, Compass Group, appeals an order of the circuit court of Du Page County confirming a decision of the Illinois Workers' Compensation Commission (Commission) awarding benefits to claimant, Jeffrey Berman, under the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2008)). Claimant cross-appeals, arguing that the Commission erred in failing to impose penalties or award costs for purportedly medically necessary modifications that claimant made to his home. For the reasons that follow, we affirm in part, vacate in part, and remand.

## II. BACKGROUND

The parties are aware of the facts, and the evidence presented below will not be set forth in great detail. Rather, we provide the following background to facilitate an understanding of this disposition. Additional detail will be provided, as necessary, as we encounter the issues raised by the parties.

Claimant was employed by respondent as a food-service manager. On March 19, 2009, he picked up a case of bottled soda weighing about 40 pounds. He immediately felt pain and heard a pop in his back, as well as a hissing sound. He worked the rest of his shift in pain. He saw Dr. Sofia Elterman the next morning and she diagnosed a sprain, prescribed Vicodin, and referred claimant to Dr. Lapp, a chiropractor. Following his appointment with Elterman, claimant worked the rest of the day in pain. He saw Lapp the next day, which was a Saturday. The following Monday, claimant went to work despite having difficulty walking. That evening, he was examined by Dr. Jonathan Erulkar at the Illinois Bone and Joint Institute and was diagnosed with stenosis. An MRI was ordered. Erulkar noted that claimant needed a cane to walk. Claimant did not have a cane, so he used his wife's walker.

¶ 6 Claimant worked on Tuesday (March 24, 2009). He was in excruciating pain and used the walker to ambulate. On Wednesday morning (March 25, 2009), claimant arose to go to work. He was descending the stairs in his house when his left foot gave way due to severe pain in his back and radiating down his leg. Claimant fell down the stairs, sustaining lacerations and bruises on his elbows, arms, and chest. Claimant was also bleeding from his nose as a result of the fall. Claimant's wife called paramedics, who arrived and helped claimant to his feet. Claimant declined to be taken to a hospital and instead went to work. At work, claimant did paperwork in an office. He could not get out of his desk chair due to pain. A coworker eventually contacted claimant's wife. She came and took claimant to the hospital, where he was admitted.

¶ 7 At the hospital, claimant was noted to have abrasions on his head, knees, elbows, and fingers. X rays revealed olecranon bursitis in both elbows. On March 27, 2009, while still in the hospital, claimant began acting delusional. A blood test revealed a blood infection. Claimant was moved to the intensive care unit. Dr. Richard Sherman drained and packed claimant's olecranon bursae. Claimant's renal function began to deteriorate, and he began bleeding in his gastrointestinal system. An endoscopy was performed.

¶ 8 An exploratory laparotomy led to a colectomy. Claimant was intubated due to respiratory failure. Subsequently, a tracheotomy was performed, as claimant had difficulty weaning from the breathing machine.

¶ 9 On April 30, 2009, claimant was transferred to a long-term care facility. Dr. Istina Morariu observed olecranon bursitis and deep vein thrombosis. A CT scan revealed various back problems, and claimant was eventually diagnosed with a disc space infection. On May 21 and May 31, 2009, claimant underwent spinal surgeries. On June 26, 2009, claimant was transferred to a rehabilitation center, where he was noted to have a right foot drop and shingles on his face. On September 29, 2009, he was transferred to a hospital due to renal insufficiency. He was treated surgically for a left-elbow ulcer. He was sent back to the rehabilitation center, but returned to the hospital on December 1, 2009, for a four-day stay. He was again transferred to the rehabilitation center. Sherman examined claimant and noted ecchymosis and a hematoma in the left forearm. Claimant returned home, but remained under medical care. On May 20, 2010, claimant returned to the hospital and underwent an ileostomy reversal. Claimant was then transferred back and forth between the rehabilitation center and the hospital a number of times.

¶ 10 Sherman was of the opinion that the abrasions on claimant's elbows led to septic olecranon bursitis. This infection spread, via claimant's blood stream, to claimant's spine, intestinal tract, and kidneys. Dr. Scott Kale, who examined claimant on respondent's behalf, opined that claimant's condition was caused by either his olecranon bursitis or his spinal infection. Kale did not believe that claimant's condition was causally related to his fall down the stairs.

¶ 11            III. ANALYSIS

¶ 12 We will first address respondent's appeal. We will then turn to claimant's cross-appeal. Before proceeding further, we note that the party appealing an issue has the burden to convince this court that a reversible error has been committed in the proceedings below. *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1173 (2008).

¶ 13    Both parties cite decisions of the Commission in support of their arguments. This is improper, as they have no precedential value. See *S&H Floor Covering, Inc. v. Illinois Workers' Compensation Comm'n*, 373 Ill. App. 3d 259, 266 (2007). Hence, we strike such citations from both parties' briefs.

¶ 14                              A. RESPONDENT'S APPEAL

¶ 15    Respondent raises a number of issues in its appeal. First, it contests the Commission's finding regarding causation. Second, it asserts that "[n]o penalties or fees should be imposed," a puzzling assertion, as the Commission did not award penalties or fees in this case. Similarly odd is respondent's third claim, that it is entitled to a credit of $420,385.16 in accordance with section 8(j) of the Act (820 ILCS 305/8(j) (West 2008)), since respondent was given a credit in this amount (discounting the possibility, of course, that respondent was entitled to two awards of exactly that amount and received only one). Fourth, respondent contends that the award of medical expenses should have been based upon a negotiated rate rather than the scheduled rate. Fifth, respondent complains of the arbitrator's denial of its request to conduct an evidence deposition of its own expert witness, Dr. Kale. Sixth and finally, respondent asserts that the Commission erred in failing to address a number of objections that it purportedly raised to medical bills.

¶ 16                                  1. Causation

¶ 17    We first turn to respondent's arguments regarding causation (respondent raises a general argument about causation and, in a separate section, an argument concerning medical expenses that is based on lack of causation; we will address these arguments jointly). It is axiomatic that to recover under the Act, an employee must show that his or her condition of ill-being is causally related to his or her employment. *Palos Electric Co. v. Industrial Comm'n*, 314 Ill. App. 3d 920, 926 (2000). When a " 'primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment.' " *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 293 (1992) (quoting 1 Arthur Larson, The Law of Workmen's Compensation § 13.00, at 3-502 (1990)). Moreover, we note that employment need be only a cause, not the sole or primary cause, of a claimant's condition, that an employer takes an employee as it finds him, and that the existence of a preexisting condition does not preclude recovery under the Act. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 205 (2003).

¶ 18    Causation presents a question of fact. *Id*. As such, we will disturb the decision of the Commission only if it is contrary to the manifest weight of the evidence. *University of Illinois v. Industrial Comm'n*, 365 Ill. App. 3d 906, 910 (2006). A decision is against the manifest weight of the evidence only where an opposite conclusion is clearly apparent. *Mobil Oil Corp. v. Industrial Comm'n*, 327 Ill. App. 3d 778, 789 (2002). It is primarily the role of the Commission to weigh and resolve conflicts in the evidence and to evaluate witnesses. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253 (1980). Finally, we owe substantial deference to the Commission's findings regarding medical issues, as its expertise in this area is well recognized. *Long v. Industrial Comm'n*, 76 Ill. 2d 561, 566 (1979).

¶ 19    The crux of this issue involves the divergent opinions of claimant's treating physician, Dr. Sherman, and respondent's section 12 examiner (820 ILCS 305/12 (West 2008)), Dr. Kale. Respondent blatantly requests this court to "find the opinion of Dr. Kale to be the most

qualified and persuasive opinion" and to "adopt the opinion of Dr. Kale." Of course, this is not our role. We will not merely reevaluate the credibility of these witnesses and substitute our judgment for that of the Commission. See *Setzekorn v. Industrial Comm'n*, 353 Ill. App. 3d 1049, 1055 (2004).

¶ 20    Indeed, resolving the conflict in the testimony of these two doctors was primarily for the Commission. *O'Dette*, 79 Ill. 2d at 253. In support of its argument that the Commission's finding was erroneous, respondent points to the relative qualifications of the two doctors. Kale is board certified in internal medicine; Sherman is an orthopedic surgeon with no special expertise in internal medicine. While this consideration favors respondent's position, it is also true that Sherman is a treating physician and Kale is a hired expert. This factor favors the Commission's finding. *International Vermiculite Co. v. Industrial Comm'n*, 77 Ill. 2d 1, 4 (1979); see also *Sears v. Rutishauser*, 102 Ill. 2d 402, 407 (1984). We cannot say Kale's heightened expertise is so compelling that it renders a conclusion opposite to the Commission's clearly apparent.

¶ 21    Respondent also attempts to reinforce Kale's testimony by pointing to the purportedly similar testimony of other physicians, specifically, Drs. Patel, Khan, Beasdale, Woloson, and Sikka. Claimant disputes respondent's characterizations of the opinions of these doctors; however, we note that, even accepting respondent's characterizations, the mere fact that one party can line up more experts on its side of a dispute does not mean that a decision by the Commission in favor of the other party is against the manifest weight of the evidence. See *Monark Battery Co. v. Industrial Comm'n*, 354 Ill. 494, 500 (1933) ("It cannot be said that, where three expert witnesses testify in contradiction of two other expert witnesses, that fact alone shows that a finding in accordance with the opinion of the lesser number is manifestly against the weight of the evidence."). Moreover, Sherman was not alone in his opinion, as respondent intimates, for, as the arbitrator noted, Dr. Neil Freedman "clarified in his medical note that [claimant's] staph aureus sepsis *** was now linked to bilateral elbow olecranon bursitis, along with diagnoses of acute renal failure and lower gastro intestinal bleed." In any event, this argument fails to persuade us that a conclusion opposite to the Commission's is clearly apparent.

¶ 22    Furthermore, it is well established that prior good health followed by a change immediately following an accident allows an inference that a subsequent condition of ill-being is the result of the accident. *Navistar International Transportation Co. v. Industrial Comm'n*, 315 Ill. App. 3d 1197, 1205 (2000). Here, the Commission recognized that claimant "had a history of treatment for a wide range of ailments." However, it noted that there was no indication that claimant was "under active medical treatment, particularly with respect to his lower back, during the period leading up to the accident." It further noted that there was no indication suggesting that claimant was suffering from an ongoing infection. Finally, it observed that claimant's problems began after his fall at home, which could be traced to his accident at work. These findings support an inference of causation and bolster the Commission's reliance on Sherman's opinion of causation.

¶ 23    In sum, respondent has not demonstrated that a conclusion opposite to the Commission's is clearly apparent. As such, we cannot find the Commission's finding to be against the manifest weight of the evidence. Also, in a one-sentence argument, respondent asserts that, based on its causation argument, claimant is not entitled to temporary total disability benefits. Having rejected respondent's causation argument, we reject this contention as well.

## 2. Penalties, Fees, and Credits

Respondent next argues that no penalties and fees should be imposed and that it is entitled to a credit in the amount of $420,385.16 for medical expenses paid by claimant's group health insurance. However, the Commission's decision grants respondent a credit in that amount and does not impose penalties or fees. Thus, it appears that respondent has already received the relief it now seeks. As these arguments present no real controversy, they are moot. *Rivera v. City of Chicago Electoral Board*, 2011 IL App (1st) 110283, ¶ 15.

## 3. Negotiated Rate

Respondent next contends that the Commission erred in awarding medical expenses based on the fee schedule rather than on a negotiated rate. Section 8(a) of the Act (820 ILCS 305/8(a) (West 2008)) provides, in pertinent part, that "[t]he employer shall provide and pay the negotiated rate, if applicable, or the lesser of the health care provider's actual charges or according to a fee schedule, subject to Section 8.2, in effect at the time the service was rendered for all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter incurred." The parties entered into a stipulation regarding fees, and stipulations are construed like contracts. *People v. Nelson*, 2013 IL App (3d) 110581, ¶ 13. Hence, a question of law is presented, so our review is *de novo*. *Myoda Computer Center, Inc. v. American Family Mutual Insurance Co.*, 389 Ill. App. 3d 419, 422 (2009).

The parties' stipulation provided as follows:

> "The parties hereby agree and stipulate that the following medical expenses would be due and owing pursuant to § 8(a) and the fee schedule provisions of § 8.2 of the Act in the event the matter is found to be compensable. However, by so stipulating, Employer does not waive any objection it may have as to liability (or the reasonableness and necessity) of said expenses."

The stipulation then set forth the exact amount to be awarded regarding various bills. For example, with regard to services rendered by North Shore Cardiologists, it stated the dates of services followed by the charge ($1,878), the scheduled amount ($1,692.72), and finally the award ($1,692.72). Clearly, the stipulation contemplated that the award for North Shore Cardiologists would be based on the schedule. Indeed, it set forth the exact amount to be awarded. The same is true of the other charges set forth in the stipulation. Having expressly agreed that these amounts were proper, respondent will not now be heard to complain of them. See *People v. Calvert*, 326 Ill. App. 3d 414, 419 (2001) ("Parties who agree to the admission of evidence through a stipulation are estopped from later complaining about that evidence being stipulated into the record."); see also *People v. Anderson*, 239 Ill. 168, 186 (1909) ("Where parties enter into an agreement in reference to the course to be pursued in any particular litigation, they will not afterwards be heard to complain that the court acted on the stipulation.").

## 4. Respondent's Motion to Depose Dr. Kale

Respondent next complains of the Commission's denial of its motion seeking leave to conduct an evidence deposition of Kale. Kale was originally scheduled to testify during the

arbitration hearing; however, claimant's counsel could not be present on the day Kale was scheduled to testify. Kale could not make himself available to testify on another day. Respondent moved to depose Kale, but the arbitrator concluded that it would be sufficient for respondent to submit Kale's report into evidence. Whether to grant such a motion is a matter within the arbitrator's discretion. See *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 96. Therefore, we will reverse only if that discretion was abused (*i.e.*, where no reasonable person could agree with the decision below). *Certified Testing v. Industrial Comm'n*, 367 Ill. App. 3d 938, 947 (2006). Moreover, an error will result in reversal only where it caused prejudice to the appealing party. *Ming Auto Body/Ming of Decatur, Inc. v. Industrial Comm'n*, 387 Ill. App. 3d 244, 257-58 (2008); *Presson v. Industrial Comm'n*, 200 Ill. App. 3d 876, 879-80 (1990).

¶ 31    Here, respondent has failed to demonstrate how this ruling prejudiced it. Respondent states, "While [respondent] maintains that Dr. Kale's opinion is persuasive and in concordance with the other qualified physicians in this matter, [respondent] was severely prejudiced because the deposition of Dr. Kale was not allowed to proceed." According to respondent, this decision "scarcely addressed [its] concern that Dr. Kale's professional background in internal medicine and infectious disease be recognized[ ] and ignored the importance of a more detailed explanation by Dr. Kale of the foundation and supporting evidence for his causal opinion." Respondent further states that Kale would have been able to "clarify" his opinions in a deposition. However, respondent never states what additional information would have been provided in a deposition. It never identifies any opinions in need of clarification, much less how they would have been clarified. It does not explain why Kale's *curriculum vitae* is insufficient to establish his credentials. The decision of the Commission cannot be disturbed based on such speculation as to prejudice. See *Conley v. Industrial Comm'n*, 229 Ill. App. 3d 925, 932 (1992); *Service Adhesive Co. v. Industrial Comm'n*, 226 Ill. App. 3d 356, 370 (1992). Absent a showing of prejudice, any error that occurred does not warrant reversal. *Ming Auto Body/Ming of Decatur, Inc.*, 387 Ill. App. 3d at 257-58.

¶ 32                              5. Unaddressed Objections

¶ 33    Respondent's final complaint is that the Commission failed to address four of its objections to "unsubstantiated medical bills." Respondent "asks this Honorable court to address these objections." It states that the arbitrator did not address its "objections regarding duplicate and unsubstantiated bills that included inconsistent charges for the same medical tests as well as unsubstantiated billing charges." Respondent provides no citation to the record indicating to which objections it is referring. Moreover, respondent does not discuss its objections in any detail (indeed, beyond the general statement set forth above, it does not even identify its objections) and cites no case law whatsoever in support of this argument. It has oft been repeated that a court of review "is not a repository into which an appellant may foist the burden of argument and research." *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37 (citing *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010)). Pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008), points not argued are forfeited. The "failure to properly develop an argument and support it with citation to relevant authority results in forfeiture of that argument." *Ramos*, 2013 IL App (3d) 120001,

¶ 37. As such, we deem this argument forfeited.

¶ 34                         B. CLAIMANT'S CROSS-APPEAL

¶ 35    We now turn to claimant's cross-appeal. In it, he raises two main arguments. First, claimant contends that the Commission erred in not imposing penalties and fees against respondent. Second, claimant alleges error in the Commission's failure to award him certain costs he incurred in making modifications to his home to accommodate his condition.

¶ 36                         1. Penalties and Fees

¶ 37    Claimant asserts that he is entitled to penalties and attorney fees in accordance with sections 16, 19(k), and 19(*l*) of the Act. See 820 ILCS 305/16, 19(k), (*l*) (West 2008). We review such claims using the manifest-weight-of-the-evidence standard of review (*Mechanical Devices v. Industrial Comm'n*, 344 Ill. App. 3d 752, 763 (2003)), so we will reverse only if an opposite conclusion is clearly apparent (*Mobil Oil Corp.*, 327 Ill. App. 3d at 789).

¶ 38    A section 19(*l*) fee is similar to a late fee. *Dye v. Illinois Workers' Compensation Comm'n*, 2012 IL App (3d) 110907WC, ¶ 15. An award under this section is mandatory if payment is late and an employer does not show an adequate justification for the delay. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 515 (1998). The burden is on the employer to justify the delay. *Jacobo v. Illinois Workers' Compensation Comm'n*, 2011 IL App (3d) 100807WC, ¶ 19. Sections 16 and 19(k) require a finding that an employer's denial of benefits was unreasonable or vexatious. *Vulcan Materials Co. v. Industrial Comm'n*, 362 Ill. App. 3d 1147, 1150 (2005). That is, the refusal to pay must result from bad faith or improper purpose. *McMahan*, 183 Ill. 2d at 515.

¶ 39    Claimant contends that he is entitled to penalties and fees under all three subsections. He points out that it was not until a year after his accident that Kale produced his report questioning causation. Moreover, claimant asserts that certain aspects of his claim–namely those pertaining to his back injury and fall down the stairs, as opposed to the subsequent infection–were undisputed. Respondent agrees that it stipulated that the at-work incident involving lifting the case of soda was work related, but it contends that the stipulation did not encompass claimant's fall down the stairs. We note that Kale testified that claimant's septic discitis was most likely responsible for claimant's fall. The Commission found that respondent's failure to immediately pay benefits was not unreasonable in light of the record. We, in turn, cannot say that an opposite conclusion is clearly apparent given that respondent could rely on Kale's testimony, even if the Commission ultimately did not find it persuasive. *Matlock v. Industrial Comm'n*, 321 Ill. App. 3d 167, 173 (2001) ("[W]hen the employer acts in reliance upon responsible medical opinion or when there are conflicting medical opinions, penalties ordinarily are not imposed.").

¶ 40    Claimant further complains that respondent did not have Kale's report available to rely on until approximately a year after the accident and that prior to this time respondent had no basis to withhold payment. Keeping in mind that reasonableness is a key consideration underlying all claims for penalties and fees (*Vulcan Materials Co.*, 362 Ill. App. 3d at 1150; *Consolidated Freightways, Inc. v. Industrial Comm'n*, 136 Ill. App. 3d 630, 633 (1985)), we could not expect an employer to be able to obtain a report from a medical expert immediately following an accident–generating such a report would take some time. That is, an employer's

conduct is not unreasonable simply because following an accident it waited while it was seeking an opinion from a medical expert, so long as the time period is reasonable in light of the facts of the case. Claimant cites nothing that holds to the contrary. We cannot say that waiting one year–under the circumstances presented here–for such an opinion is so clearly unreasonable that a conclusion opposite to the Commission's is clearly apparent. Nor can we conclude that it is clearly apparent that respondent's conduct was vexatious under these circumstances. As such, we perceive no basis to disturb the Commission's decision to decline claimant's request for penalties and fees.

¶ 41                                   2. Home Modifications

¶ 42       Claimant's final argument is that the Commission erred when it did not award him the costs of certain modifications he made to his house (*e.g.*, installing a chair lift and modifying his bathroom and stairs) that were recommended by his physical therapists. The modifications cost $10,230. The Commission, adopting the decision of the arbitrator, declined to award these costs, explaining:

> "[T]here is no evidence that these recommendations were made or even seconded by a treating physician. Without such a prescription by a physician and said physician's inherent representation that such recommendations were reasonable and necessary and related to the accident in question, the Arbitrator is unwilling to make such an award based solely on the recommendation of a physical therapist."

Thus, it appears that under no circumstances would the Commission accept the recommendation of a physical therapist regarding a home modification. Respondent contends that the prescription of a physician is required. Whether the law requires the prescription of a physician presents a question of law. Thus, *de novo* review is appropriate.

¶ 43       Respondent cites *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 380-84 (2009), in support of its position. That case does involve the testimony of a physician, regarding the necessity of purchasing a computer; however, it nowhere says that such testimony was a necessary prerequisite to awarding such a cost. *Id*. As such, *Beelman Trucking* provides little guidance here.

¶ 44       Indeed, our research indicates that there is no requirement that the opinion of a physician is necessary to support such an award. In *Zephyr, Inc. v. Industrial Comm'n*, 215 Ill. App. 3d 669, 675 (1991), we found no error in the Commission's relying on the opinion of an architect who "admittedly did not rely on a doctor's recommendations in formulating his remodeling plan for claimant's home." Moreover, our review of the Act reveals no such requirement. See 820 ILCS 305/8 (West 2008).

¶ 45       Finally, we note that this question has arisen outside the context of workers' compensation law. In *Compton v. Ubilluz*, 353 Ill. App. 3d 863 (2004), the trial court permitted an expert witness to opine on the future medical care of the victim of a tort. *Id*. at 865. The witness's qualifications were that he was the executive director of an organization that provided assistance to people with disabilities, and his duties involved, in addition to his administrative tasks, making recommendations regarding "life care plans." *Id*. This included helping "families modify their homes or construct new ones to accommodate disabled family members." *Id*. The witness recommended, *inter alia*, that the victim have a power wheelchair, a voice-activated computer, and a van with a wheelchair lift. *Id*. at 866. The

- 9 -

reviewing court found the admission of this testimony to be within the trial court's discretion. *Id*. at 867. Thus, *Compton* provides additional support for our holding.

¶ 46    As the Commission applied the incorrect legal standard, we vacate that portion of its decision and remand for further proceedings on this issue. There is no absolute requirement that an award of the type sought here be supported by the testimony of a physician, *so long as competent evidence establishes the reasonableness and necessity of the award.* On remand, the Commission should evaluate the opinions of the physical therapists as it would any other such witness in light of all appropriate facts and circumstances.

¶ 47                                    IV. CONCLUSION

¶ 48    In light of the foregoing, we vacate the Commission's decision regarding expenses for modifications to claimant's home, and we affirm in all other respects. We remand this cause for further proceedings in accordance with this opinion and also as appropriate pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327 (1980).

¶ 49    Affirmed in part and vacated in part; cause remanded.

¶ 50            **SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING**

¶ 51    Respondent, Compass Group, has filed a petition for rehearing in this case. In it, respondent contends that we misconstrued a stipulation between it and claimant, Jeffrey Berman; that the stipulation unfairly punishes respondent and results in unjust enrichment to claimant; that the stipulation violates public policy; and that our decision allowing an award of medical expenses to be based on the recommendation of a physical therapist is erroneous. For the reasons that follow, we deny respondent's request for rehearing.

¶ 52    The purpose of a petition for rehearing is to allow parties to call a reviewing court's attention to matters it might have overlooked or misapprehended. *Getto v. City of Chicago*, 392 Ill. App. 3d 232, 237 (2009). It is not a vehicle for a party to reargue the case. *Id*. Generally, points not previously argued are deemed forfeited and may not be urged for the first time in a petition for rehearing. *Catalano v. Pechous*, 69 Ill. App. 3d 797, 814 (1978). Respondent's second and third arguments were not raised previously, and we will not consider them at this belated point. Moreover, the fourth argument constitutes simple reargument (which we do not find persuasive), so we need not address it either. We will, however, address respondent's first contention.

¶ 53    Respondent takes issue with our construction of the stipulation it entered into with claimant regarding medical expenses. It reads as follows:

> "The parties hereby agree and stipulate that the following medical expenses would be due and owing pursuant to § 8(a) and the fee schedule provisions of § 8.2 of the Act in the event the matter is found to be compensable. However, by so stipulating, Employer does not waive any objection it may have as to liability (or the reasonableness and necessity) of said expenses."

It then sets forth the exact amounts to be awarded regarding various bills. We construed this to mean that the parties had agreed that the amounts contained in the stipulation would be awarded if respondent were found liable for claimant's injuries. Respondent now contends that it intended to stipulate only to the rates that would apply if the fee schedule provisions of

section 8.2 of the Act (820 ILCS 305/8.2 (West 2008)) applied and that it intended to preserve its ability to argue that the negotiated rate would determine medical expenses. See, *e.g.*, *Springfield Urban League v. Illinois Workers' Compensation Comm'n*, 2013 IL App (4th) 120219WC, ¶¶ 37-39.

¶ 54    Respondent's primary problem is the plain language of the stipulation. As noted in our original opinion in this appeal, stipulations are construed like contracts. *People v. Nelson*, 2013 IL App (3d) 110581, ¶ 13. As such, our primary goal is to ascertain the intent of the parties. *International Supply Co. v. Campbell*, 391 Ill. App. 3d 439, 452 (2009). The best indication of that intent is the plain language of the agreement, which, when unambiguous, must be enforced as written. *TH Davidson & Co. v. Eidola Concrete, LLC*, 2012 IL App (3d) 110641, ¶ 10. Our review is *de novo*. *In re Marriage of Best*, 387 Ill. App. 3d 948, 949 (2009).

¶ 55    Essentially, respondent contends that "The parties hereby agree *** that the following medical expenses would be due and owing pursuant to § 8(a) and the fee schedule provisions of § 8.2 of the Act *in the event the matter is found to be compensable*" (emphasis added) actually means: The parties hereby agree that the following medical expenses would be due and owing pursuant to section 8(a) and the fee schedule provisions of section 8.2 of the Act *in the event the fee schedule is found to apply*. Clearly, respondent's construction flies in the face of the plain language of the stipulation.

¶ 56    Respondent attempts to avoid this result by finding multiple meanings in the word "liability." Specifically, respondent torturedly asserts that "liability" can mean liability for the bill itself and liability for the amount of the bill. It cites four definitions of "liable" from Merriam-Webster Dictionary (online) (see http://www.merriam-webster.com/dictionary/liable (last visited Apr. 23, 2014) (defining "liable" as "obligated according to law or equity"; "subject to appropriation or attachment"; "being in a position to incur"; and "exposed or subject to some usually adverse contingency or action")); however, all suggest the state of being liable rather than the amount one is liable for. Black's Law Dictionary defines "liability" as the "state of being legally obligated or accountable" and "[a] financial or pecuniary obligation." Black's Law Dictionary 925 (7th ed. 1999). Again, these definitions do not indicate that the amount of the liability is inherent in the meaning of the word. We find this argument unpersuasive.

¶ 57    Before closing, we emphasize that our analysis of this issue is more a matter of contract law than workers' compensation law. Controlling here was what the parties agreed to rather than the meaning of any provision of the Act. In any event, we deny respondent's petition for rehearing.