2020 IL App (1st) 190979-U
No. 1-19-0979

SECOND DIVISION
June 2, 2020
Modified upon denial of rehearing on July 14, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| CHICAGO BANCORP, INC., | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 15 L 5043 |
| | ) | |
| CHAO CHEN, SOUTHEASTERN SECURITY | ) | |
| PROFESSIONALS, LLC, and IVAN BASTOS, | ) | The Honorable |
| | ) | Jerry A. Esrig, |
| Defendants | ) | Judge Presiding. |
| | ) | |
| (Chao Chen and Southeastern Security | ) | |
| Professionals, LLC, Defendants, Cross-plaintiffs- | ) | |
| Appellees; Ivan Bastos, Defendant and Cross- | ) | |
| defendant). | ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1 *Held*: Where the plaintiff did not suffer any damages as a result of the defendant's alleged fraud, the application of the collateral source rule was rendered moot, and the trial court did not err in granting summary judgment in favor of the plaintiff.

¶ 2    Plaintiff, Chicago Bancorp, Inc., appeals from the trial court's grant of summary judgment in favor of defendants Chao Chen and Southeastern Security Professionals, LLC (collectively, "Southeastern defendants"), on plaintiff's claims of fraud and conspiracy to defraud. For the reasons that follow, we affirm.

¶ 3                                    BACKGROUND

¶ 4    Plaintiff included three counts in its Second Amended Complaint: conspiracy to commit fraud by all defendants (Count I), fraud by defendant Ivan Bastos (Count II), and fraud by the Southeastern defendants (Count III). In support of these claims, plaintiff alleged that in 2007, Bastos applied for a home mortgage loan with plaintiff. In doing so, Bastos falsely represented that he was employed with Southeastern Security making $264,000 per year. Bastos was not, and never had been, employed by Southeastern Security. Plaintiff further alleged that Bastos arranged to have Chen support his false claim of employment. Chen, on behalf of Southeastern Security, completed, signed, and returned to plaintiff a written verification form that falsely confirmed that Bastos was employed with Southeastern Security at $264,000 per year. Chen also falsely verified Bastos' claimed employment and salary during a verification phone call from plaintiff. These misrepresentations were made by Bastos and Chen for the purpose of inducing plaintiff to make the loan to Bastos. On September 14, 2007, relying on those misrepresentations, plaintiff loaned $510,320 to Bastos. Plaintiff alleges that Bastos defaulted on that loan in that he was not employed by Southeastern Security, did not earn $264,000 per year, and did not have sufficient income to make the payments on the loan. Bastos did not repay any portion of the loan, and plaintiffs claim they have been damaged in the amount of the loan--$510,320.

¶ 5    The Southeastern defendants moved for summary judgment, arguing that plaintiff was unable to prove its claim of fraud against them, because there was no evidence that anyone associated with plaintiff prepared, signed, or sent the written employment verification form to the Southeastern defendants; there was no evidence that Chen signed or otherwise wrote on the written employment verification form; and the telephone verification occurred after the loan closed, thus negating any reliance by plaintiff. The Southeastern defendants also argued that plaintiff had not sustained any damages as a result of the alleged fraud, because plaintiff sold the loan for more than the amount it lent to Bastos and was never required to repay any of that amount.

¶ 6    The Southeastern defendants submitted a number of documents in support of their motion for summary judgment. Included were documents related to the closing of the Bastos loan and its subsequent sale to CitiMortgage, Inc. ("CMI"). These documents reveal that plaintiff and CMI entered into a "Correspondent Agreement" in 2004, which governed the terms of loan sales from plaintiff to CMI, including the Bastos loan. The Bastos loan, made in the amount of $510,320, closed on September 14, 2007. At closing, Bastos signed an acknowledgement that, effective November 1, 2007, the date on which his first installment payment was due, the servicing of his loan would be assigned, sold, or transferred to CMI. Less than two weeks after the close of the loan, on September 26, 2007, plaintiff sold the Bastos loan to CMI. CMI paid plaintiff a total of $513,755.28 on the sale.

¶ 7    The Southeastern defendants also submitted excerpts of several transcripts, including the deposition transcript of John Phillips, the loan officer on the Bastos loan. Phillips testified that he does not recall being involved in the verification process for the Bastos loan, and he would not have been involved in verifying Bastos' employment, as that would have been the duty of the

processing department. He also testified that all of the loans issued by plaintiff in 2007 were sold on the secondary market, and most of the time, he would have known to whom a particular loan was being sold so that the buyer's particular underwriting requirements could be followed.

¶ 8     The deposition of Joshua Elges, who processed the Bastos loan for plaintiff, was also submitted. Elges testified that he did not recall the specifics of processing the Bastos loan. After being shown exhibits, Elges testified that he was not involved in obtaining the written employment verification of Bastos from the Southeastern defendants. This conclusion was based on the fact that his signature did not appear on the written employment verification form. He testified that if he had obtained the written verification, he would have signed the form. He did, however, sign the form memorializing the verbal telephone verification of Bastos' employment. Accordingly, he assumes that he must have talked to someone at Southeastern Security, even though he does not specifically recall speaking with Chen or anyone else at Southeastern Security.

¶ 9     The deposition of Chen, along with a written declaration by him, was also submitted in support of the motion for summary judgment. According to his deposition testimony and declaration, in 2007, he was the CFO and CEO of Southeastern Security and was responsible for payroll and responding to requests for employment verification. At no point was Bastos ever employed with Southeastern Security. No one at Southeastern Security ever received or signed the written employment verification form from plaintiff. Chen denied that it was his signature on the form or that he had any contact with plaintiff regarding Bastos. Chen also denied ever speaking with Elges. Chen testified that Bastos was the father of one of his high school classmates, Fred Bastos, but that Chen had limited contact with Bastos and believed he currently lived in Brazil.

¶ 10      The Southeastern defendants also submitted the transcript of an evidentiary hearing on a motion to dismiss they filed earlier in the proceedings. At that hearing, Chen and Elges testified consistently with their deposition testimony. In addition, Ellen Mulcrone Schuetzner testified as an expert in forensic document examination. She testified that it was her opinion that the signature on the written employment verification form was not Chen's.

¶ 11      Finally, the Southeastern defendants submitted documents demonstrating that starting in 2012, CMI instituted federal lawsuits against plaintiff related to a number of bad loans plaintiff had sold to CMI and refused to repurchase. Included in these alleged bad loans was the Bastos loan. Ultimately, these suits were settled in 2016. Under the terms of the settlement, The Federal Savings Bank ("TFSB"), which was purchased by the owners of plaintiff using funds they earned from their ownership of plaintiff, was to pay an agreed upon amount to settle the claims against the various defendants, including plaintiff. Plaintiff, which had dissolved in January 2013, did not contribute to the settlement.

¶ 12      In response to the motion for summary judgment filed by the Southeastern defendants, plaintiff argued that there was sufficient evidence of fraud and the Southeastern defendants' participation in that fraud. This contention was based on evidence that Bastos included Chen's personal cell phone number as the number of Southeastern Security on his loan application; the written employment verification form was sent to Southeastern Security via a fax number independently obtained from the internet; the completed verification form listed Chen's name and cell phone number and, like Bastos' loan application, listed Bastos' monthly salary with Southeastern Security as $22,000 and Chen's title as human resources manager; Elges called the phone number listed on Southeastern Security's website and spoke to someone who claimed to be Chen and who confirmed that Bastos was employed with Southeastern Security and that

Chen's title was human resources manager; and Bastos, despite Chen's claim to the contrary, must have had contact with Chen after Chen and Fred graduated high school, because Bastos had Chen's cell phone number, and Chen did not have a cell phone in high school. Plaintiff also argued that it was damaged in the amount it lent to Bastos—$510,320—and any payments received after the fact, such as the payment from CMI in the loan purchase, could not be considered under the collateral source rule.

¶ 13        Although the trial court found genuine issues of material fact regarding whether Bastos committed fraud and whether the Southeastern defendants participated in that fraud by falsely verifying Bastos' employment, it ultimately granted summary judgment in favor of the Southeastern defendants on the basis that plaintiff did not sustain any injury or damages as a result of the alleged fraud. More specifically, the trial court found that plaintiff had sustained no out-of-pocket or pecuniary loss, because it sold the Bastos loan to CMI, which resulted in plaintiff recouping the amount of the loan plus fees, and plaintiff was never required to repay any of that amount to CMI. The trial court also noted that plaintiff admitted that it received more by selling the loan than it otherwise would have, thus placing it in a better position than if it had never made the loan. In addition, plaintiff did not offer any alternative theory of computing damages other than claiming that it was entitled to recover the amount of the loan made to Bastos. With respect to the collateral source rule, the trial court concluded that it did not apply in this case, because plaintiff did not make any expenditures to secure the payment from CMI; rather the payment was the result of an arms-length transaction with a third party.

¶ 14        Plaintiff filed a motion to reconsider, which the trial court denied. After resolving all remaining pending claims, plaintiff instituted this appeal.

¶ 15                                   ANALYSIS

¶ 16    On appeal, plaintiff argues that the trial court erred in granting summary judgment in favor of the Southeastern defendants because the collateral source rule applies to preclude the loan purchase price paid by CMI from offsetting plaintiff's damages. Because we conclude that the trial court was correct in finding no genuine issue of material fact that plaintiff did not suffer any damage or harm as a result of the alleged fraud, any issue regarding the application of the collateral source rule is rendered moot.

¶ 17    Summary judgment is to be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). Because summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is clear and free from doubt, we must view all evidence in the light most favorable to the nonmovant. *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 994 (2005). We review the trial court's grant of summary judgment *de novo*. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 360 (2006).

¶ 18    Damages are an essential element of claims of fraud and conspiracy to commit fraud. See *Bosak v. McDonough*, 192 Ill. App. 3d 799, 803 (1989) ("The elements of a cause of action for conspiracy to defraud are: (1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3*) damages to the plaintiff as a result of the fraud*." (Emphasis added.)); *Commercial National Bank of Peoria v. Federal Deposit Insurance Corp.*, 131 Ill. App. 3d 977, (1985) (stating that in order to make out a cause of action for fraud, the plaintiff must prove that the defendant "(1) [m]ade a false statement of a material fact[;] (2) [k]new or believed the statement to be false[;] (3) [i]ntended to induce action in reliance thereon[;] (4) [a]ctually induced the desired action[; and] (5) [c]aused damage to the party due to his reliance.")). Thus,

unless and until plaintiff can establish that it was damaged or injured as a result of the alleged fraud by the Southeastern defendants and Bastos, it has failed to make out a cause of action for fraud or conspiracy to commit fraud. See *Shah v. Chicago Title & Trust Co.*, 119 Ill. App. 3d 658, 661 (1983) ("Proof of actual injury resulting from the allegedly fraudulent misrepresentations is an essential element of actionable fraud.").

¶ 19 The damage or harm to the plaintiff in a cause of action for fraud is the pecuniary loss caused by the plaintiff's justified reliance on the defendant's misrepresentation. Restatement (Second) of Torts § 525. "The measure of damages in an action for fraud is determined from the loss to the plaintiff rather than from the gain to the defendant." *Shah*, 119 Ill. App. 3d at 662.

¶ 20 Plaintiff claims that it was injured by the alleged fraud because, absent the claimed misrepresentations, it would not have loaned $510,320 to Bastos and, thus, that its resulting damages is the amount loaned--$510,320. We disagree. Even though Bastos' alleged actions of providing false information to obtain the loan, moving to Brazil, and not repaying the loan, if proven, would be reprehensible, plaintiff's claim fails because we conclude that plaintiff was not injured[1] by the extension of this loan. The harm associated with the misrepresentation of Bastos' employment status was the failure to be repaid the money loaned to Bastos, and the right to repayment was sold to CMI prior to any default by Bastos.

---

[1] As was noted by the Second District:
> " 'Damage' (an element of the tort of common-law fraud) is to be distinguished from 'damages' (a remedy). It has been noted that, although the words, 'damage,' 'damages,' and 'injury' are sometimes treated loosely as synonyms, there is a material distinction between them. Injury is the illegal invasion of a legal right; damage is the loss, hurt, or harm which results from the injury; and damages are the recompense or compensation awarded for the damage suffered."

*Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 758 (1993). In this case, our conclusion is that plaintiff failed to establish that it was damaged, *i.e.*, harmed by Bastos' and the Southeastern defendants' alleged fraudulent conduct.

¶ 21    To illustrate, had plaintiff retained the Bastos loan instead of selling it and had Bastos repaid the loan in its entirety, plaintiff would not be permitted to recover any damages, even assuming that Bastos and the Southeastern defendants did, in fact, misrepresent Bastos' employment status, because plaintiff would have suffered no harm. Thus, plaintiff would only suffer a loss as a result of the alleged fraud if and when Bastos failed to repay the amount loaned to him. It is undisputed, however, that plaintiff sold the Bastos loan—and thus the right to collect repayment from Bastos—on September 26, 2007, over a month before Bastos was required to make his first repayment on November 1, 2007. Accordingly, Bastos' default—and thus the loss necessary to complete plaintiff's cause of action—did not occur until *after* plaintiff had transferred the right to repayment to CMI, making the loss CMI's, not plaintiff's.

¶ 22    In other words, the harm/loss under these facts is attached to the repayment (or lack thereof) of the loan, such that the loss belongs to whomever owns the right to repayment. Once plaintiff sold the loan to CMI prior to the first payment date, CMI was entitled to the repayment of the loan and bore the entire burden of any failure by Bastos to repay the loan. Because plaintiff was never entitled to any repayment of the loan, it never bore any burden of the loss caused by the alleged fraud. After all, absent Bastos' failure to repay, the alleged fraudulent misrepresentations, by themselves, did not cause any harm to plaintiff.

¶ 23    We also observe that CMI paid plaintiff $513,755.28 to purchase the Bastos loan, more than the amount that plaintiff loaned to Bastos. Accordingly, plaintiff cannot claim that the transfer of the loan—and the right to repayment—resulted in a loss.

¶ 24    Plaintiff argues that, despite selling the Bastos loan to CMI for more than it loaned to Bastos, it nevertheless suffered a loss, because, under the correspondent agreement, it was obligated to repurchase the Bastos loan from CMI when it was discovered that Bastos had

obtained the loan through the use of false information. In addition, plaintiff argues that it was damaged to the extent that it was forced to pay to defend itself against CMI's federal suits and that TFSB—which was purchased by the owners of plaintiffs—contributed to the settlement of those suits. These arguments are unavailing.

¶ 25 First, despite the fact that the correspondent agreement did call for plaintiff's repurchase of loans that were secured on false information, plaintiff did not ever repurchase the Bastos loan, and, given the settlement of the federal suit brought by CMI and the dissolution of plaintiff, it appears that plaintiff never will. Second, to the extent that plaintiff was required to expend funds to defend against CMI's federal suits and TFSB was required to pay settlement funds to settle those federal suits, those monies were expended as a direct result of plaintiff's alleged failure to honor its obligation to repurchase bad loans, not the alleged fraud by Bastos and the Southeastern defendants. Finally, even if the settlement funds could somehow be connected to defendants' alleged fraud, those funds were paid by TFSB, not plaintiff. The fact that the former owners of plaintiff used the funds they earned operating plaintiff to purchase TFSB does not change our opinion that no funds belonging to plaintiff were used in the payment of the settlement.

¶ 26 Finally, we observe that plaintiff appears to conflate the analysis of whether it was injured or damaged and the analysis of whether the collateral source rule applies. The collateral source rule provides that "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." Restatement (Second) of Torts §920A(2). As is apparent, the collateral source rule precludes the application of payments by third parties to offset the *damages*, *i.e.*, the remedy, owed by the tortfeasor. Thus, it presupposes that the plaintiff has already established the liability of the defendant, including harm to the plaintiff

resulting from the defendant's tortious conduct. After all, absent the establishment of liability of the defendant, there are no damages against which a third-party payment might be credited.

¶ 27    For the reasons discussed above, we conclude that plaintiff is unable to establish the liability of the Southeastern defendants, because it failed to demonstrate that it suffered any pecuniary harm as a result of the alleged fraud. In so concluding, we do not, as plaintiff seems to assume, conclude that plaintiff did not suffer any recoverable damages because its harm was compensated by the purchase price paid by CMI. Rather, we reach our conclusion based on the fact that the harm resulting from the alleged fraud (Bastos' failure to repay the loan), did not occur until after plaintiff transferred the right to repayment to CMI, thus making the loss CMI's, not plaintiff's. Accordingly, because plaintiff did not suffer any harm as a result of the Southeastern defendants' alleged fraud, it failed to establish the liability of the Southeastern defendants and we need not reach the issue of whether the collateral source rule applies.

¶ 28    In sum, because there is no genuine issue of material fact that plaintiff did not suffer any harm as a result of the Southeastern defendants' alleged fraud, the trial court did not err in granting the Southeastern defendants' motion for summary judgment.

¶ 29                    Petition for Rehearing

¶ 30    Following the filing of this decision, plaintiff filed a petition for rehearing in which it took issue with our conclusion that it did not suffer any injury as a result of the alleged fraud. According to plaintiff, our analysis is incorrect, because it was injured to the full extent of the loan immediately upon consummation of the transaction with Bastos, even though it was never entitled to repayment. In support of this position, plaintiff cites the proposition that the measure of damages in a fraud case is the value of the asset at the time of the transaction had the misrepresentations been true minus the actual value of the asset at the time of the transaction in

light of the misrepresentations. See *Schwitters v. Springer*, 236 Ill. 271, 274-76 (1908); *Posner v. Davis*, 76 Ill. App. 3d 638, 644-45 (1979). Plaintiff's argument is unpersuasive, and we deny the petition for rehearing.

¶ 31    First, as an initial matter, the Southeastern defendants argued in their brief on appeal that the trial court's judgment should be affirmed because plaintiff failed to demonstrate that it suffered any harm as a result of the alleged fraud. Plaintiff, however, chose not to make any meaningful response to this argument in its reply brief and has chosen instead to make its first substantive argument on the issue only after we agreed with the Southeastern defendants on the issue. For this reason, plaintiff has forfeited this contention. See *Compass Group v. Illinois Workers' Compensation Commission*, 2014 IL App (2d) 121283WC, ¶ 52 ("[A petition for rehearing] is not a vehicle for a party to reargue the case. [Citation.] Generally, points not previously argued are deemed forfeited and may not be urged for the first time in a petition for rehearing.").

¶ 32    Second, even setting aside forfeiture, plaintiff makes no attempt to explain how, exactly, it was harmed or injured by the alleged fraud. As discussed above, the damage or harm to the plaintiff in a cause of action for fraud is the pecuniary loss caused by the plaintiff's justified reliance on the defendant's misrepresentation. Restatement (Second) of Torts § 525. Yet, plaintiff makes no attempt, even in its petition for rehearing, to identify the pecuniary loss it suffered in light of the fact that CMI purchased the right to repayment before the first payment was due from Bastos.

¶ 33    Instead, plaintiff repeatedly argues the law with respect to the measurement of damages in a fraud case. Plaintiff is absolutely correct that the proper measure of damages in a fraud case is generally the value of the asset at the time of the transaction had the misrepresentations been

true minus the actual value of the asset at the time of the transaction in light of the misrepresentations. See *Schwitters*, 236 Ill. at 274-76; *Posner*, 76 Ill. App. 3d at 644-45. The measure of damages, however, has absolutely no bearing on the question of whether plaintiff was injured, *i.e.*, suffered any harm as a result of the alleged fraud. In fact, the measure of damages does not even become relevant until *after* it has been established that plaintiff was injured. See *Mulligan v. QVC Inc.*, 382 Ill. App. 3d 620, 627 (2008) ("However, [the plaintiff's] damages model is flawed because before she can calculate her damages, she must establish that she in fact suffered actual damage. [Citation.] Whereas damages are the recompense or compensation awarded for the damage suffered, damage is the loss, hurt, or harm which results from the injury. [Citation.] Thus, before we can apply the benefit-of-the-bargain rule, we must first consider whether [the plaintiff] has been actually harmed as a result of [the defendant's] alleged deceptive practice.").

¶ 34 Plaintiff appears to believe that because the measure of damages involves an assessment of the value of the asset at the time of the transaction, that necessarily means that it was immediately injured at the time of the transaction and to the full extent of the loan. We disagree. Although the time of the transaction is used as the date of valuation for purposes of calculating damages, it does not logically follow that plaintiff was necessarily and immediately injured upon consummation of the transaction. Nor does any of the authority cited by plaintiff support the proposition that the fraud tort is complete immediately upon consummation of the transaction and that plaintiff is injured to the full extent of the loan, regardless of how much the borrower might repay. Such a proposition—that where a loan is obtained through the use of fraudulent misrepresentations, a lending plaintiff is injured to the full extent of the loan immediately upon closing, regardless of whether the borrower repays all or part of the loan—is directly contrary to

the well established rules that the damage or harm to the plaintiff in a cause of action for fraud is the pecuniary loss caused by the plaintiff's justified reliance on the defendant's misrepresentation and that fraud damages are determined by loss to the plaintiff rather than the gain to the defendant. Restatement (Second) of Torts § 525; *Shah*, 119 Ill. App. 3d at 662.

¶ 35    Finally, plaintiff complains that the effect of our holding is that a lender cannot pursue its fraud claim until the entire term of the loan has passed. This argument is both without merit and irrelevant. It is without merit, because our decision announces no such rule but, instead, simply concludes that on the basis of the specific facts of this case, plaintiff has failed to establish that it was injured in any way by the alleged fraud. Whether a particular plaintiff was injured by fraudulent misrepresentations is an issue to be determined on a case-by-case basis.

¶ 36    Moreover, even if our conclusion in this case carried with it some implication as to when a lender might bring a claim for fraud, we note that plaintiff's fears are unfounded. Where the plaintiff lender owns the right to repayment and thus can be injured by non-payment, in most situations, the loan documents will contain an acceleration provision that permits the lender to accelerate repayment and collect the full amount of the loan upon the borrower's default. If the borrower then does not repay the full amount, the plaintiff lender has then been injured to the full extent of the loan and there is no need to wait for the term of the loan to expire before bringing suit. In situations where, as here, the plaintiff lender sells the right to repayment to another, the injuries to the plaintiff can be assessed immediately as of the date of the sale, because the plaintiff will have no future rights to repayment.

¶ 37    In any case, even if plaintiff's contention had some substantive merit, the fact of the matter remains the same: a fraud plaintiff must establish that it was injured by the alleged fraud before it is entitled to recover any damages. This is a basic element of a fraud claim that cannot

be disposed of simply because the full extent of the damages might not be known for some time. We do not agree with plaintiff's apparent belief that just because a lender might have to wait for the borrower to default before the lender is considered injured, it should be entitled to immediately collect the full amount of the loan, even if the borrower was complying with all the terms of repayment.

¶ 38                                              CONCLUSION

¶ 39          For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 40          Affirmed.